UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDE M. NONI

                    Plaintiff

vs.

COUNTY OF CHAUTAUQUA and                    CIVIL ACTION NO:
COUNTY OF CHAUTAUQUA HOME
And ROSS DIBIASE As Aider and Abettor
                                            03-CV-0600A(F)

                    Defendants

---

## <u>MEMORANDUM OF LAW</u>

The defendant, **COUNTY OF CHAUTAUQUA,** also sued herein as the County

of Chautauqua Home, and defendant **ROSS DIBIASE,** submit this Memorandum of Law

in support of their Motion for Summary Judgment.   It is the position of all of the

defendants that the action instituted by the plaintiff herein has no basis in law or fact.   As

more fully set forth below, it is the position of the defendants that the complaint served

against the defendant is defective as it fails to state a valid cause of action based upon

"retaliation".   Therefore, it is respectfully requested that the Summons and Complaint

served herein be dismissed in its entirety.

### <u>Material Facts Not in Dispute</u>

The facts which are not in dispute have been fully set forth in defendants' Rule  56

statement, submitted herewith.   In addition, the facts have been fully discussed in the

affidavits of Julie P. Apter, Esq., and Ross DiBiase, submitted in support of defendants'

Motion for Summary Judgment.

With respect to the legal arguments submitted in support of defendants' Motion, the defendants will address the issue of the claim brought against Ross DiBiase in his individual capacity first, as well as the issue of consequential damages. Thereafter, the substantive arguments regarding the plaintiff's failure to prove a retaliation claim will be addressed herein.

### Legal Argument

#### A. *Ross DiBiase as Aider and Abettor*

The plaintiff has sued the defendant **ROSS DIBIASE** as "Aider and Abettor" based upon the belief that he was the individual engaging in retaliatory acts against the plaintiff herein.   The facts demonstrate, however, that Mr. DiBiase was not engaging in any retaliatory acts. Accordingly, the causes of action directed to him should be dismissed as a matter of law.

By way of background. and as already set forth in the motion papers, this Court is aware that the plaintiff originally filed an action claiming discrimination and harassment while working as a dietary aide.   She worked as a dietary aide at the County Home.   At that time, Ross DiBiase was the Food Service Director.   He was not her direct supervisor.  Her supervisor was a woman by the name of Wanda Hall.   While the plaintiff was employed as a dietary aide, and as the basis for her prior lawsuit, she alleges to have been harassed by a fellow employee.   She never claimed that she was harassed by **Ross DiBiase** or any other supervisor.

In the matter before this Court, the plaintiff's claim of harassment which is alleged to have occurred during the year 1999 was fully investigated by the County Home. As a result of the investigation, it was concluded that it was impossible to investigate an old

incident.   Although the plaintiff did agree with this conclusion and voluntarily signed a
*General Release,* the County Home agreed to train the employees pursuant to a sexual
harassment policy.

The plaintiff admitted in her prior testimony that the actions which she claims
constituted 1983 violations (involving sexual harassment) in the original Federal Court
lawsuit merely consisted of name calling and orders to clean various areas in the kitchen
where she was assigned to work.   She could not be more specific and could not pinpoint
a date and/or time when this occurred.   She further could not pinpoint any actions on the
part of any supervisory employees at the Home.   Accordingly, the plaintiff was unable to
submit sufficient proof to establish her claim, and the lawsuit was eventually dismissed
by Federal Court Justice John T. Elfvin.

The plaintiff voluntarily left her employment with the County Home in August,
2000.   The County Home left her position open until October, 2000 at which time it
was necessary to fill her job due to plaintiff's refusal to return to work.   Mr. **Ross
DiBiase** attempted to work with the plaintiff, as Food Service Director, in seeking her
return to work.   However, plaintiff chose to ignore these efforts and decided to seek
employment elsewhere.   It is undisputed that her departure involving her employment at
the County Home was voluntary and not related to any alleged Title VII discrimination.

As Mr. DiBiase stated in his affidavit, there were issues regarding plaintiff's
employment involving safety and production problems.   The County Home was a place
wherein the sick and infirmed resided.    It was up to the Food Service Director to assure
that these patients were provided nutritional meals suitable to their health records and
which were provided to the patients on a timely basis.   It was imperative for Mr. DiBiase

to be assured that each employee would follow all the rules and regulations regarding the service of these individuals.   Mr. DiBiase did have a concern involving the plaintiff since she would not be willing to work with the County Home regarding her schedule; however, Mr. DiBiase was instructed by his superiors to provide the plaintiff with every opportunity to continue her employment and work with her in that respect.   He did attempt to work with her and never subjected her to any harassment and/or retaliation despite her claims of harassment by a fellow employee.   In fact, the records which have been provided to this Court establish that she continually received salary increases and offers of employment up to her voluntary departure from the County Home.

After the plaintiff voluntarily left the employ of the County Home, and in order to support her claim for "retaliation", she asked a friend and a private investigator to pose as potential employers.   These individuals spoke with Mr. DiBiase about Brandi Noni's employment with the firm.   Although it is undisputed that Mr. DiBiase did speak with these individuals, it is further undisputed that these individuals were not potential "employers".   Further, Mr. DiBiase never stated anything other than the truth regarding plaintiff.   Since Mr. DiBiase truly believed he was speaking to nursing home facilities, he thought it important to advise these "facilities" about her attendance problem and her work habits.   Based upon the plaintiff's production and safety problems, Mr. DiBiase could not recommend the plaintiff for employment. He is aware that a long term care facility is involved in the day-to-day care of the elderly and/or infirmed.   State safety regulations mandate that employees be of the highest caliber.   Accordingly, he could not honestly recommend the plaintiff for employment based upon her performance at the

County Home.   *However, at no time did he not recommend the plaintiff for employment because of the prior discrimination lawsuit filed.*

The facts at all times clearly establish that Mr. DiBiase, on those two occasions he was presented with telephone calls from "false employers", was acting on behalf of and as an agent of the defendants.   At no time was he acting in an individual capacity or acting solely without regard for the defendant's business.   Accordingly, Mr. DiBiase cannot be found personally liable for any acts engaged in.   The telephone calls do not represent any malicious, oppressive or outrageous conduct.   At all times, Mr. DiBiase was acting as a director of Food Service.   In this respect, he cannot be found personally liable and the causes of action directed to him personally should be dismissed as a matter of law.   See, **United States v. Jamieson Science and Engineering, Inc., 191 F. Supp.2d 17 (U.S.D.C., District of Columbia, 2002).**

### B. *Consequential Damages*

The plaintiff is further seeking damages, consequential in nature, based upon what she perceives as retaliation.   She has failed to set forth, however, what "consequential damages" she is seeking.   It is undisputed that the named defendant herein is a municipal corporation, i.e. **CHAUTAUQUA COUNTY**.   It is further undisputed that the **COUNTY OF CHAUTAUQUA HOME** is a mere division of the County and therefore cannot sue or be sued.   Last, it is undisputed that **ROSS DIBIASE** has been sued in his official capacity as an employee of **CHAUTAUQUA COUNTY**.   In this respect, the claimed damages sought in this lawsuit are those damages sought directly from a municipal corporation, which may only be compensatory in nature.

Assuming that the plaintiff is seeking "punitive damages" as her consequential damages, the general principle is that "punitive damages are not recoverable against municipalities or government officials sued in their official capacities". **Greiner v. County of Greene, 811 F.Supp. 796 (N.D.N.Y. 1993).** This principle is derived from New York law which states that punitive damages are generally not assessed against municipalities unless authorized by statute. **ReSource N.E. of Long Island, Inc. v. Town of Babylon, 80 F.Supp.2d 52 (E.D.N.Y. 2000).** This would include an action which is brought pursuant to Title VII, the statute at issue in this matter.

The United States Supreme Court has stated, definitely, that municipalities are not subject to punitive damages under Section 1983 or Title VII. **City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748 (1981).** The reasoning behind this rule of law is that taxpayers should not have to be made accountable for punitive damages due to acts of officials which are contrary to an individual's constitutional and civil rights. Thus, a municipality which has been named a defendant may not be subject to punitive damages. See also, **Shifa Services v. Port Authority of New York, 1997 W.L. 563301 (S.D.N.Y. 1997).** Likewise, an official of the municipality is not subject to punitive damages unless he acted outside of the scope of his duties, and acted with an evil motive and intent. See, **Gonzalez v. Bratton, et al., 147 F.Supp.2d 180 (U.S.D.C., S.D.N.Y. 2001).** There is absolutely no evidence herein to establish that Ross DiBiase acted with an evil motive and intent. Thus, any award of punitive/consequential damages against him are improper and contrary to law.

Based upon the general rule of law that a municipality and its officers are not subject to any punitive damage claims, unless authorized by statute, the defendants

respectfully request that this court strike those portions of plaintiff's complaint that seek said consequential damages.  See, **Sorensen v. City of New York, 2000 W.L. 1528282 (S.D.N.Y. 2000).**  (See also, **McClam v. City of Norfolk Police Dept., 877 F. Supp. 277 (E.D.Va. 1995)** wherein the general rule that Title VII cases brought against municipalities are not subject to punitive damages is discussed).


### C. *Title VII – Retaliation Claim*

It is the position of the defendants herein that despite the arguments above regarding Ross DiBiase's lack of personal liability and the inappropriateness of consequential - punitive damages, this Court must dismiss this matter in the first instance for the failure of plaintiff to establish a prima facie case of retaliation under Title VII.   More specifically, the plaintiff has failed to meet the criteria required in order to pursue any claim for relief under Title VII.   Accordingly, she may not proceed any further with this matter before this court.

In order for plaintiff to proceed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a) ("Title VII"), the plaintiff must establish that she was given a negative job reference *because of her prior 1983* claim.   See, **Fischer v. AT & T Corporation, 1997 WL 232757 (May 2, 1997, N.D. Ill.)**  In this respect, it is incumbent upon her to establish that the negative job reference was given solely due to the prior harassment claim, and not given for any other reason.   Clearly, plaintiff has failed to establish that any "negative reference" *specifically derived from the underlying 1983 action* exists.   In order to establish this point, a review of the history of plaintiff's underlying claim should be made.

The underlying claim originally raised by the plaintiff involved allegations that she was sexually harassed at work by a fellow employee. In this respect, she alleged a violation of 42 U.S.C. Section 1983. More specifically, the plaintiff alleged that her rights and privileges under the U.S. Constitution were deprived based upon actions of her employer, **CHAUTAUQUA COUNTY HOME.** Despite raising these allegations in the underlying complaint, the facts demonstrated that the plaintiff was in fact alleging a violation of Section 1983 merely based upon her claims the she was verbally harassed by a cook who was also employed at the Home. There were no facts establishing that she was sexually harassed by a supervisory, and was not subject to harassment as part of the underlying policy or custom of the County Home.

First and foremost, it was the position of the defendants that the plaintiff's initial complaint was defective in the first instance to raise any allegations of Section 1983 violations. In order for the plaintiff to properly assert a Section 1983 claim in her complaint, she must "assert a claim against a municipality for a deprivation of constitutionally protected rights. The plaintiff must allege that her injury has resulted from some policy or custom of the municipality". **Greiner v. County of Greene, 811 F.Supp. 796 (N.D.N.Y. 1993), citing Monell v. N.Y.City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978).** If the complaint fails to make any such allegation, it must be dismissed as a matter of law. **Greiner, supra.**

The Supreme Court has addressed the issue of institution of actions against municipalities based upon 1983 claims. In **Monell, supra.**, the Court held that a 1983 lawsuit against a municipality must allege the existence of a custom or policy which is of such long standing as to have the force and effect of law. The Court further defined

"custom" as the "persistent and widespread discriminatory practice of state officials".
**Supra** **at 691.**   In the matter before this court, the plaintiff's prior complaint revealed
that she had failed to allege any persistent and widespread discriminatory practice of state
and/or local officials.   As the facts above demonstrate, she merely alleged that she was
subjected to harassment by a fellow employee by being subjected to "name-calling".
Thus, she failed, in the first instance, to allege those allegations which must be raised in
order to proceed on a 1983 claim and, as a result, her underlying action was dismissed.

The plaintiff's underlying complaint failed in the first instance since the alleged
injury she claimed was inflicted solely by an employee of the municipality, and not one
who had responsibility for policy making decisions.   See, **Monell, supra.**   Municipal
liability under Section 1983 is only appropriate where an actor with "final policy making
authority" has been involved in the challenged conduct.   **St. Louis v. Prarprotnik, 485**
**U.S. 112, 123, 108 S.Ct. 915, 9242 (1985).**   Moreover, State law provides the appropriate
source for assessing who possesses final authority to establish municipal liability to
attach.   For a subordinate municipal employee's actions to give rise to a Section 1983
claim, the action "must be so manifest as to imply constructive acquiescence of senior
policy making officials".   **Wagner v. County of Cattaraugus, 866 F.Supp. 709**
**(W.D.N.Y. 1994).**

The plaintiff had clearly failed to establish a Section 1983 claim.   Likewise, she
had not filed nor pursued a claim under Title VII.   However, the facts as set forth herein
clearly establish that she was not subjected to any Title VII discrimination while being
employed at the County Home.   Her sole grievance involved a personality conflict with a
fellow employee, and the evidence does not support any claim that she was subjected to

discrimination based upon a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the officer's" of the defendants herein. Furthermore, she has failed to demonstrate that the actions which she alleges to have occurred were the result of a decision maker who possesses final authority to establish municipal policy.   There is no dispute that any actions which were alleged to have occurred by Timothy Odebralski were not attributed to any policy or practice of the **CHAUTAUQUA COUNTY HOME**.   The plaintiff has clearly failed to set forth a valid Section 1983 claim and has failed to establish any claim of discrimination based upon Title VII.   See, **Carrero v. New York City Housing Authority, 890 F.2d 569 (2d Cir. 1989).**

The background as set forth above is important to understand since any retaliation claim pursued, based upon Title VII, must be derived from a legitimate Title VII claim. To establish a prima facie case of retaliation under Title VII, the plaintiff must show:

> (1) participation in activity, protected under anti-
>      discrimination statutes;
>
> (2) employment decision or action disadvantaging
>      plaintiff; and
>
> (3) causal connection between protected activity
>      and adverse decision.

**Grant v. Bethlehem Steel Corp., 622 F.2d 43 (2d Cr. 1980); Morelli v. Chaps Community Health Center, 193 F.Supp.2d 636 (E.D.N.Y. 2003).**   Following the three prong test set forth in **Grant**, the plaintiff has failed to establish a cause of action by failing to demonstrate what employment decision or action disadvantaged the plaintiff.

As stated above, the plaintiff, after claiming she was sexually harassed, was given a full investigation of the charge by her employer.   She eventually conceded that she did not have a valid claim and signed a release.   Thereafter, she began to experience difficulties at work by failing to show up, failing to arrive timely or failing to follow appropriate orders.   Every opportunity was given to her to correct her problems; however, she chose to leave the employment.   Her job was kept open for her but she refused to return; thus, she disregarded every effort made by her employer to help her with her position.

The defendants herein *did not* terminate her employment.  However, with her attitude and refusal to show up for work or perform the work required, the defendants were concerned about the health and safety of their patients.   Accordingly, any refusal to provide a reference in the plaintiff's favor to other nursing facilities was clearly due to plaintiff's employment issues, and had nothing to do with any prior discrimination claim. Additionally, the plaintiff's original claim of discrimination involved a 1999 incident. Her claimed "retaliation" occurred sometime in 2002.  The plaintiff also voluntarily left the employ of the County Home in the year 2000.   Thus, the time period which had gone by from the time she left to the time she "set up" the telephone calls would defeat any retaliation claim.  Any act of retaliation must be shown to be immediate from the time of the discriminatory act and the time of the adverse employment action.   Since the alleged discriminatory act occurred in 1999, and there was NO adverse employment action (plaintiff left on her own despite her job being kept open for her), she cannot pursue a retaliation claim years later without the proper nexus.  See, **Howard v. Holmes, 656 F. Supp. 1144 (S.D.N.Y. 1987).**

It is evidently clear that the plaintiff has failed to establish any form of retaliation, as required under Title VII.  Title VII does prohibit an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an unlawful employment practice. **(Hopkins v. Baltimore Gas and Electric Company, 77 F.3d 745 (4th Cir. 1996)).** However, the plaintiff must establish what discrimination the employer engaged in, initially, to proceed any further.   Again, the record clearly establishes that the plaintiff was offered to continue her job, and the employees the plaintiff worked with were sent to sexual harassment training.   There is absolutely no evidence in the record that the County Home engaged in any discriminatory conduct in the first instance.  Thus, the plaintiff cannot go further and attempt to hold the County Home responsible for her lack of education and inability to obtain further employment. She must prove that she was harassed because of her sex, that she was terminated because of her claimed harassment, and she was given bad references because of this. **(Downey v. A.H. Belo Corporation, 402 F.Supp. 1368 (N.D.Texas, 1975)).**   Additionally, the fact that she believes that she received "bad references" from the 34 potential employers set forth in the interrogatories is "speculative" and she cannot base her retaliation claim on this belief.  See, **Downey, Id.**   Without proof that any of those 34 employers actually contacted the County Home, and they were given a bad reference because of her prior 1983 sexual harassment claim, she cannot proceed any further.

The law is well settled that references given to prospective employers based upon poor performance, and not based upon any complaints of discrimination, does not constitute "adverse employment action" for purposes of a retaliation lawsuit. **Bailey v. USX Corporation, 850 F.2d 1506 (1988).**   A defendant/employer is allowed to

articulate a non-discriminatory reason for the opinions regarding the work performance of an employee.   These non-discriminatory reasons would relieve the employer of any liability for any retaliation claim.   See, **Dollard v. Perry's Ice Cream, 2001 WO 1117137 (W.D.N.Y. 2001).**   In fact, the Second Circuit has noted that the plaintiff must establish that any "action" taken was taken for discrimination, and not for any other reason.   Should the plaintiff be unable to prove that there were non-discriminatory reasons involved (as here, involving her work performance), the plaintiff's claim for retaliation must fail. **See Weinstock v. Columbia University, 224 F.3d 33 (2d Cir. 2000).**

Finally, reference should be made to the fact that the plaintiff is solely relying on two "fake" employers telephoning the County Home.   The plaintiff has established that she applied to 34 legitimate places of employment.   Admittedly, not one of those employers ever contacted the Home for a reference.   The plaintiff took it upon herself to "create" a claim by setting up the defendants and having two individuals "pose" as potential employers.   By the plaintiff's own admission, these individuals *were not* legitimate employers.   Accordingly, the plaintiff has not established any "damage" had she established "retaliation" in the first instance.   These individuals would not have offered her any employment, and are not true "employers" as defined in the every day sense of the word.   Accordingly, plaintiff's attempt to seek money from her past employer by "creating" a claim should fail in the first instance.

## Conclusion

As set forth above, it is the position of the defendants herein that the plaintiff has failed to establish a cause of action based upon retaliation, under Title VII.  For this

reason, as more clearly set forth above, the defendants respectfully request this Court to

Dismiss the Complaint in its entirety, and render judgment in favor of the defendants

herein.

DATED:  Buffalo, New York
        November 29, 2004


                              Respectfully submitted,


                              Julie P. Apter, Esq.
                              Goldberg Segalla, LLP
                              *Counsel for Defendants*
                              665 Main Street, Suite 400
                              Buffalo, New York 14203
                              (716) 566-5400

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRANDE M. NONI

                Plaintiff                        **CERTIFICATE OF SERVICE**

vs.

COUNTY OF CHAUTAUQUA and
CHAUTAUQUA COUNTY HOME  and
ROSS DIBIASE, AS Aider and Abettor                **03-CV-0600A(F)**

                Defendants

---

This is to certify that on the 30th day of November 2004, a true copy of the foregoing

Memorandum of Law in support of Defendants' Motion for Summary Judgment was sent by first

class mail, postage pre-paid, to the attorney for Plaintiff as follows:

          **DAVID RODRIQUEZ, ESQ.**
          L/O Noemi Fernandez, PLLC
          69 Delaware Avenue
          Suite 701
          Buffalo, New York 14202

                                    JULIE P. APTER, ESQ.

**SWORN TO BEFORE ME THIS**
**30th DAY OF NOVEMBER 2004**

AUDREY G. KENT
Notary Public State of New York
Qualified in Erie County
My Commission Expires May 31, 2007