UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRANDE M. NONI,

                          Plaintiff,

         v.

COUNTY OF CHAUTAUQUA,
COUNTY OF CHAUTAUQUA HOME, and
ROSS DiBIASE, as Aider and Abettor,

                     Defendants.

_____

                             **REPORT**
                             **and**
                **RECOMMENDATION**

                          **03-CV-0600A(F)**

APPEARANCES:      DAVID RODRIGUEZ, ESQ.
                     Attorney for Plaintiff
                     69 Delaware Avenue
                     Suite 701
                     Buffalo, New York 14202

                     GOLDBERG SEGALLA LLP
                     Attorneys for Defendants
                     JULIE P. APTER, of Counsel
                     665 Main Street
                     Suite 400
                     Buffalo, New York 14203


## JURISDICTION

       This case was referred to the undersigned by Honorable Richard J. Arcara on

September 15, 2003 for all pretrial matters including report and recommendation on

dispositive motions.  The matter is presently before the court on Defendants' motion for

summary judgment (Doc. No. 13), filed November 30, 2004.


## BACKGROUND

       Plaintiff commenced this action on August 6, 2003, against Defendants,

including her former employer Chautauqua County Home ("the Home"), an agency of

Defendant Chautauqua County ("the County"), and the Home's Food Service Director

Ross DiBiase ("DiBiase") (together, "Defendants"), alleging violations of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and New York Human Rights Law,

New York Executive Law § 290 *et seq.*  In particular, Plaintiff claims that DiBiase

retaliated against Plaintiff, who had previously brought an employment discrimination

action against Defendants, by informing potential employers seeking references and

recommendations about Plaintiff's lawsuit and describing Plaintiff's work habits in a

negative manner.  Defendants' answer (Doc. No. 3) was filed on September 9, 2003.

On November 30, 2004, Defendants filed the instant motion for summary

judgment (Doc. No. 13) ("Defendants' Motion").  The motion is supported by the

attached Affidavit of Julie P. Apter, Esq. ("Apter Affidavit"), Exhibits A through G

("Defendants' Exh(s) __"), and Defendants' Statement of Material Facts Not In Dispute,

as well as Defendants' Memorandum of Law (Doc. No. 15) ("Defendants'

Memorandum").[1]  In opposition to summary judgment, Plaintiff filed, on January 31,

2005, a Memorandum of Law (Doc. No. 18) ("Plaintiff's Memorandum"), and, on

February 1, 2005, the Affirmation of David Rodriguez, Esq. (Doc. No. 21) ("Rodriguez

Affirmation"), Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23)

("Plaintiff's Statement of Facts")[2], attached to which is the Affidavit of Daniel Travis

---

[1] Originally filed on November 30, 2004 as Doc. No. 14, to correct an electronic filing error, Defendants' Memorandum was refiled on December 1, 2004, as Doc. No. 15.

[2] Plaintiff's Statement of Facts was originally filed on February 1, 2005 as Doc. No. 19 without the attached Travis Affidavit.

("Travis Affidavit"), and a document entitled "Continuation of Exhibits" (Doc. No. 25), attached to which are five separate exhibits ("Plaintiff's Exh(s) __").  In further support of summary judgment, Defendants filed on February 17, 2005 an Amended Statement of Material Facts Not in Dispute (Doc. No. 28) ("Defendants' Statement of Facts"), with attached exhibits, and, on February 30, 2005, the Reply Affidavit of Julie P. Apter, Esq. (Doc. No. 30) ("Apter Reply Affidavit").[3]  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment should be GRANTED.  Alternatively, Plaintiff should be limited to seeking only compensatory damages.

## FACTS[4]

On August 31, 1995, Plaintiff, Brande M. Noni ("Plaintiff"), commenced employment as a dietary aide with Defendant Chautauqua County Home ("the Home"), an agency of Defendant County of Chautauqua ("County").  Plaintiff's reported to Wanda Hall ("Hall") and Tim Odelbraski ("Odelbraski").  As a dietary aide, Plaintiff engaged in general food preparation, serving and cleaning.  Beginning in 1997, Plaintiff was assigned for a period of time the task of buttering bread for the noon-time meals served at the Home.  While assigned to the bread buttering task, Plaintiff claims Odelbraski often referred to Plaintiff as "bread and butter Barbie," which Plaintiff interpreted as an attempt to belittle her based on her gender.  Plaintiff maintains that

---

[3] Originally filed on February 17, 2005 as Doc. No. 26, to correct an electronic filing error, the Apter Reply Affidavit was refiled on February 17, 2005 as Doc. No. 30.

[4] Taken from the pleadings and motion papers filed in this action.

when she asked Odelbraski to stop referring to her as "bread and butter Barbie,"
Odelbraski just laughed, and when Plaintiff complained of Odelbraski's conduct to Hall,
Hall advised Plaintiff to ignore it.  According to Plaintiff, Odelbraski's use of the
offensive moniker continued until August 13, 2000, when Plaintiff left her employment
with the Home.

    In an internal Memorandum dated August 14, 2000, Defendant Ross DiBiase
("DiBiase"), Home's Food Service Director, described to the Home's Administrator Tim
Hellwig ("Hellwig") a variety of employment issues the Home's food services department
staff was experiencing with Plaintiff, including Plaintiff's repeated failure to report for
work as scheduled, inability to get along with co-workers, refusal to perform assigned
tasks, and walking off the job.  At that time, DiBiase wished to terminate Plaintiff's
employment, but Hellwig instructed DiBiase to provide Plaintiff with an opportunity to
work out her employment issues.  Despite being advised, in writing, by DiBiase that
Plaintiff was scheduled to work in September and October, 2000, Plaintiff never again
reported for work at the Home.  Defendants kept Plaintiff on the payroll until October
2000, on the assumption that Plaintiff would eventually return to work.

    On October 23, 2001, Plaintiff commenced, pursuant to 42 U.S.C. § 1983, a civil
rights action in this court, *Noni v. County of Chautauqua*, 01-CV-0745E(Sr) ("*Noni I*"),
against the Home and the County asserting she was constructively discharged from her
employment with the Home when constant sexual harassment resulted in a hostile work
environment.  In that case, Plaintiff also alleged she suffered retaliation when she
denied a co-worker's sexual advances.  On August 5, 2003, *Noni I* was dismissed *sua
sponte* for lack of subject matter jurisdiction based on Plaintiff's failure to allege a

4

predicate violation of federal law.  *Noni I*, August 5, 2003 Order (Doc. No. 24) at 2-3.

On August 6, 2003, Plaintiff filed the instant action ("*Noni II*"), alleging that since terminating her employment at the Home, Defendant DiBiase has "embarked on a pattern of continuous discriminatory retaliation against plaintiff for her complaints of discrimination by making adverse comments to potential employers."  Complaint ¶ 15. In particular, Plaintiff maintains that between August 13, 2000 and September 9, 2002, DiBiase made negative comments to persons seeking job references as to Plaintiff.  *Id*. ¶ 17-21.  Specifically, DiBiase allegedly revealed that Plaintiff had previously filed an employment discrimination action against the Home and the County, Complaint ¶ 17, and made negative comments to the inquiries, including that Plaintiff "was nothing but trouble," *id*. ¶ 18, "[i]f I was in your shoes, I would not hire her," *id*. ¶ 19, "she would not be an asset to your company," *id*. ¶ 20, and that DiBiase would not recommend Plaintiff for employment, *id*. ¶ 21.  Plaintiff attributes the fact that she has applied for employment with 36 different potential employers, but has yet to receive a single employment offer, to DiBiase's alleged negative job references.  Seeking to substantiate her suspicions, Plaintiff asked a friend, Daniel Travis ("Travis"), to telephone Defendants posing as a potential employer, and request a personal reference about Plaintiff.

On August 2, 2002, Travis telephoned the Home and asked to speak with DiBiase about a reference for Plaintiff.  Travis Affidavit ¶ 3.  According to Travis, DiBiase, in response to Travis's reference request, made several negative statements regarding Plaintiff, including that the Home "had nothing but trouble with [Plaintiff]."  *Id*. ¶ 6.  DiBiase explained that Plaintiff would arrive at work "impeccably clean," but that

5

"the minute she got a spot on anything she would leave the tray line, she'd leave the
dish room, you know she didn't care and her priority was herself and her appearance.
She wouldn't do cleaning and stuff."  *Id*.  DiBiase further revealed that after leaving her
dietary aide job with the Home, Plaintiff sued the Home and the County for harassment.
*Id*. ¶¶ 8-9.  In that conversation, DiBiase explained to Travis that Plaintiff was never a
full-time employee at the Home but, rather, worked as a "sub" and did not have a
permanent schedule.  *Id*. ¶¶ 5 and 12.  According to DiBiase, 75% of Plaintiff's work
hours were "prescheduled to replace dietary staff who was on vacation, personal time,
holiday time, etc.," *id*. ¶ 13, Plaintiff's work attendance was described as "very poor," *id*.
¶ 15, and DiBiase commented that he did not believe Plaintiff would be an asset to
Travis's facility.  *Id*. ¶¶ 10, 20.  Additionally, DiBiase stated that there were "a lot of
problems with [Plaintiff's] interaction of [*sic*] other employees."  *Id*. ¶ 11.

      Upon learning of the statements DiBiase allegedly made to Travis, Plaintiff hired
a private investigator, Paul H. Lawrence ("P.I. Lawrence" or "Lawrence") of Empire
Investigations "to either confirm or debunk the theory that defendant DiBiase was
intentionally retaliating against Plaintiff by mentioning her discrimination lawsuit against
defendant in job reference requests."  Plaintiff's Statement of Facts ¶ 7.  On August 16,
2002, posing as a potential employer, P.I. Lawrence telephoned the Home and spoke
with DiBiase regarding Plaintiff's employment with the Home.  P.I. Lawrence's
Investigation Report, Plaintiff's Exh. B.  According to Lawrence, DiBiase's comments
throughout their telephone conversation were essentially the same as those comments
reported by Travis, and included such comments as Plaintiff did what she wanted and
did not take orders, and confirmed that Plaintiff had filed a harassment claim against

the Home and the County. *Id*. DiBiase also advised Lawrence to "stay away from

[Plaintiff] like the plague," and that Plaintiff was "nothing but trouble." *Id*.

On September 9, 2002, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"), alleging retaliation by Defendants for

her earlier employment discrimination complaints and for bringing her earlier § 1983

claim, *Noni I*. On September 17, 2002, the EEOC acknowledged receipt of Plaintiff's

claim and commenced an investigation. On March 5, 2003, the EEOC issued its

determination, finding direct evidence that Defendants had retaliated against Plaintiff for

her earlier complaints by providing unfavorable references to prospective employers.

March 5, 2003 EEOC Determination Letter, Plaintiff's Exh. E.


## DISCUSSION

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The

court is required to construe the evidence in the light most favorable to the non-moving

party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*,

477 U.S. at 255). The party moving for summary judgment bears the burden of

establishing the nonexistence of any genuine issue of material fact and if there is any

evidence in the record based upon any source from which a reasonable inference in the

non-moving party's favor may be drawn, a moving party cannot obtain a summary

judgment.  *Celotex, supra*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.  *Rattner*, *supra*, 930 F.2d at 209.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided in Rule 56, the Rule does not impose on the party opposing summary judgment an obligation to come forward with affidavits or other admissible evidence of his own."  *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary judgment in favor of defendant because defendant failed to allege factual basis for assertions contained in defendant's affidavit such that plaintiff, as the party opposing summary judgment, was not required to adduce evidence to defeat summary judgment and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the statements, rather than to their admissibility).

In the instant case, Defendants argue in support of summary judgment that Plaintiff is unable to establish the requisite causal connection between DiBiase's alleged unfavorable comments regarding Plaintiff's employment at the Home, and Plaintiff's inability to secure new employment since leaving her dietary aide position at the Home.  Defendants' Memorandum at 12-13 (citing *Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir. 2000)).  Defendants also maintain that insofar as

9

Plaintiff seeks in this § 1983 action to recover consequential damages, such damages are not available from municipal defendants, including the County, the Home and DiBiase insofar as DiBiase is sued in his official capacity.  *Id*. at 5-7.  In opposition to summary judgment, Plaintiff argues that the requisite causal connection between Plaintiff's filing of her § 1983 action, *Noni I*, and Plaintiff's inability to secure other employment, is established by the statements DiBiase made in response to the requests of Travis and P.I. Lawrence, posing as potential employers, regarding Plaintiff's work ethics and earlier employment discrimination action.  Plaintiff's Memorandum at 3-5.  In further support of summary judgment, Defendants assert that the evidence Plaintiff submitted in opposition to summary judgment is not in admissible form and, as such, is insufficient to defeat summary judgment.  Apter Reply Affidavit ¶¶ 6-7.  Alternatively, Defendants maintain such information fails to establish the requisite causal connection to support Plaintiff's retaliation claim.  *Id*. ¶¶ 8-15.

> As relevant to the instant case, Title VII forbids any employer from
>
> discriminating against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Such retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis.  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998)).  *See also Donato v. Plainview - Old Bethpage Central School District*, 96 F.3d 623, 633 (2d Cir. 1996) (stating Title VII retaliation claims "are analyzed under the three-step burden shifting

approach originally explained in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).").   Further, retaliation claims under New York's Human Rights Law "are generally governed by the same standards as federal claims under Title VII."  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609-610 (2d Cir. 2006) (citing cases and granting summary judgment dismissing plaintiff's retaliation claim under New York Human Rights Law for failure to establish a triable issue on federal retaliation claim under Title VII).

To establish a *prima facie* case of retaliatory discharge, a plaintiff must demonstrate "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  *Jute*, *supra*, at 173 (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001)).  A Title VII plaintiff's burden of proof to survive a summary judgment motion at the *prima facie* stage is *de minimis*.  *Jute*, *supra* (citing *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005)).  "In determining whether this initial burden is satisfied in a Title VII retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.  *Jute*, *supra* (citing *Donohue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987)).

If the plaintiff meets the initial burden of establishing a *prima facie* case of retaliation in violation of Title VII, then a presumption of such retaliation arises.  *Jute*, *supra*.  The burden then shifts to the defendant employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  *Id*. (citing *Quinn*, *supra*, at 768).

11

Provided the employer meets its burden, the presumption of retaliation dissipates and the burden of proof shifts back to the plaintiff to show that the employer's proffered reason was a pretext for retaliation, and that the employer's true motivation was unlawful retaliation. *Donato*, *supra*, at 634. In the instant case, Plaintiff has failed to establish a *prima facie* case of retaliation because Plaintiff is unable to demonstrate the requisite causal connection between Defendants' alleged negative employment references and her inability to secure employment.

Plaintiff has met three of the four elements necessary to establish a *prima facie* case of Title VII retaliation. In particular, Plaintiff has established that she participated in a protected activity when she complained to Hall, her supervisor at the Home, of Odelbraski's repeated use of an offensive nickname, *i.e.*, "bread and butter Barbie," a complaint which later was the basis for Plaintiff's § 1983 action, *Noni I*, against Defendants County and the Home. It is not clear from the record whether Plaintiff ever filed a charge with the EEOC regarding the alleged employment discrimination prior to commencing *Noni I*, which was brought pursuant to § 1983 and which was subsequently dismissed *sua sponte* for lack of subject matter jurisdiction and failure to state a claim given Plaintiff failed to allege a predicate violation of federal law, *Noni I*, August 5, 2003 Order (Doc. No. 24) at 2-3. Nevertheless, "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, [and] this notion of 'opposition' includes activities such as 'making complaints to management . . . .'" *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Thus, Plaintiff's failure to exhaust administrative remedies with regard

12

to the underlying predicate action does not remove Plaintiff's complaints to Hall and the filing of the § 1983 action from Title VII's protection.  Nor does the fact that *Noni I* was dismissed for lack of subject matter jurisdiction have any effect on the validity of Plaintiff's present retaliation claim because a plaintiff need not establish that the conduct she opposed was actually a violation of the statute so long as she can establish that she possessed a "'good faith, reasonable belief that the underlying challenged actions of the employer violated that law.'"  *Quinn*, *supra*, at 769 (quoting *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  The first element of Plaintiff's retaliation claims is therefore established.

As to the second element, the fact that Defendants County and the Home were also named as defendants in *Noni I*, an action in which Defendants' appeared and defended, establishes Defendants' awareness of Plaintiff's participation in activity within Title VII's protection.  *See Jute*, *supra*, at 175-76 (holding defendant employer knew plaintiff had engaged in activity protected under Title VII where plaintiff was identified as a potential witness by a co-worker plaintiff in a deposition given in a prior Title VII employment discrimination action brought by the co-worker against the employer).  *See also Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 276 (S.D.N.Y. 2001) (commenting that where plaintiff made employment discrimination complaints directly to the employer, rather than to a government agency, "there is no question" that the employer was aware of the complaints).  The second element of Plaintiff's *prima facie* case of retaliation in violation of Title VII is thus established.

Further, it is well-settled that a negative employment reference given to a

13

potential employer seeking to hire the defendant employer's former employee qualifies

as an adverse employment action. *Jute*, *supra*, at 178-79 (observing that negative job

reference that adversely affects a plaintiff's ability to secure employment constitutes an

adverse employment action). *See also Pantchenko v. C.B. Dolge Company, Inc.*, 581

F.2d 1052, 1055 (2d Cir. 1978) (although no longer employed by defendant, plaintiff

remained defendant's employee for purposes of maintaining Title VII retaliation action

alleging that after plaintiff left defendant's employment, defendant refused to provide

letter of recommendation and made disparaging and false statements to prospective

employers to retaliate for plaintiff's filing of EEOC claim).  In fact, the Second Circuit

has suggested that, "as a matter of law a former employer's giving an entirely neutral

reference to an inquiring prospective employer, leading the prospective employer to

decline to hire the applicant, can constitute an adverse employment action." *Sarno v.*

*Doublas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (analyzing

retaliation claim under Americans with Disabilities Act).

In the instant case, Plaintiff attempts to demonstrate that DiBiase provided

negative references to potential employers by submitting statements from two

individuals, Travis and P.I. Lawrence, who were not potential employers but who, at

Plaintiff's request, posed as potential employers in an attempt to discover what type of

references Defendants were likely to provide to an actual potential employer of Plaintiff.

As such, Plaintiff cannot rely on the Travis Affidavit or P.I. Lawrence's Investigation

Report to establish that but for a positive employment reference from Defendants, a

potential employer would have hired Plaintiff.  Further, as hearsay, neither the Travis

Affidavit nor P.I. Lawrence's Investigation Report constitutes admissible evidence as

required to defeat summary judgment.  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.") (citing *Sarno*, *supra*, at 160 (requiring elements of *prima facie* case of employment discrimination be supported by "legally sufficient evidence")).

   In particular, the Travis Affidavit contains only hearsay statements given that Travis recounts statements supposedly made by DiBiase and proffered for the truth of the matter asserted.  Fed. R. Evid. 801(c).  P.I. Lawrence's Investigation Report is not a sworn statement and, as such, does not qualify as admissible evidence.  Fed. R. Civ. P. 56(e) (requiring sworn statements in opposing summary judgment).  Significantly, Plaintiff fails to point to any exception to the hearsay rule available under the Federal Rules of Evidence to support the admissibility of the Travis Affidavit or the P.I. Lawrence Investigation Report Plaintiff filed in opposition to summary judgment.

   Moreover, even assuming, *arguendo*, that Plaintiff's proffered evidence could be admitted to establish circumstantial evidence that Defendants were providing negative employment references to prospective employers considering hiring Plaintiff, *Jute*, *supra*, at 179 (holding circumstantial evidence that defendant former employer was providing negative employment reference to plaintiff's prospective employers was sufficient to defeat summary judgment on the causation element of *prima facie* case), Plaintiff still fails to establish the requisite causal connection between the negative references and loss of prospective employment because there is no evidence in the

record that any of the employers with whom Plaintiff allegedly sought employment ever

actually considered Plaintiff for employment.

Specifically, although Plaintiff provides the names and addresses of 36 business

entities with whom Plaintiff allegedly sought employment after leaving the Home's

employ, Plaintiff's Response to Defendants' Interrogatory No. 7 ("Plaintiff's Response to

Interrogatory No. 7"), Defendants' Exh. D, the record is devoid of any evidence that

such business actually had open employment positions for which Plaintiff was qualified.

Nor does the record indicate that any of the 36 businesses ever invited Plaintiff to

interview for or otherwise spoke with Plaintiff about possible employment, or seriously

considered hiring Plaintiff before contacting Defendants for an employment reference.

Rather, a review of Plaintiff's Response to Interrogatory No. 7 shows that despite listing

36 different businesses with which Plaintiff maintains she sought employment, Plaintiff

failed to identify, as Interrogatory No. 7 requested, the specific job titles, duties, salaries

and locations of the positions sought with any of these possible employers. *Id*. Plaintiff

also failed to indicate whether she submitted a resume, was interviewed for any

position, or whether she took any written or oral tests in connection with the

applications. *Id*. Significantly, Plaintiff has not even proffered evidence as to what

information she provided the 36 businesses regarding her employment at the Home, or

any contact information for the Home should an employment reference concerning

Plaintiff be sought. *See* Plaintiff's Deposition Transcript, Defendants' Exh. E, at 23.

Nor has Plaintiff inquired of any of the businesses as to why she was not contacted for

employment. *Id*. at 43. Indeed, Plaintiff admitted during her deposition that she never

interviewed for any of the employment positions for which she contends she applied

after leaving the Home's employ, and that none of the employers ever advised Plaintiff as to why Plaintiff was not interviewed for the various positions.  Plaintiff's Deposition Transcript, Defendants' Exh. E, at 43, 52-53.

Moreover, Plaintiff does not dispute Defendants' contentions that Plaintiff was not terminated from but, rather, voluntarily left her employment at the Home.  In particular, DiBiase asserts that Plaintiff "voluntarily terminated her employment with the County of Chautauqua on October 10, 2000."  DiBiase Affidavit ¶ 4.  According to DiBiase, throughout Plaintiff's employment at the Home, "there were numerous production and safety problem issues which were involved with [Plaintiff's] employment," for which Plaintiff was given numerous opportunities to correct.  *Id*. ¶ 5.  For example, following a meeting with Plaintiff in August 2000 regarding Plaintiff's work performance, including Plaintiff's failure to make herself available when called to work, Plaintiff continued to fail to respond to Defendants' efforts to schedule Plaintiff for work in September and October 2000. *Id*. ¶¶ 5, 18.   DiBiase maintains that Plaintiff's continued failure to report to work as scheduled caused DiBiase to recommend terminating Plaintiff's employment, but that Home Administrator Tim Hellwig instructed DiBiase to provide Plaintiff with the opportunity to resolve her employment issues.  *Id*. at 21 (citing DiBiase's August 14, 2000 Internal Memorandum to Administrator Hellwig, Defendants' Exh. E, describing a variety of employment issues the Home's food services department staff was experiencing with Plaintiff, including Plaintiff's repeated failure to report for work as scheduled, inability to get along with co-workers, refusal to perform assigned tasks, and walking off the job).  DiBiase's assertions regarding Plaintiff's work habits are corroborated by copies of portions of Plaintiff's personnel file

submitted by Defendants in support of summary judgment.  *See* Defendants' Exhs. A through E.  Significantly, Plaintiff has not challenged the accuracy of these statements and exhibits.

As such, the record is devoid of any issue of fact from which a reasonable jury could find Plaintiff's failure to secure employment since leaving her position at the Home could be attributed to Defendants' providing negative employment references to Travis and P.I. Lawrence, including mentioning Plaintiff's earlier § 1983 action, *Noni I*, against the County and the Home.  Nor is there any evidence that any alleged negative employment references were made to retaliate against Plaintiff for complaining to management and commencing her earlier litigation, *Noni I*.  Summary judgment should thus be GRANTED in favor of Defendants.

Alternatively, Defendants maintain that insofar as the County is a municipal entity, the Home is an agency of the County, and DiBiase is sued in his official capacity as a County employee, punitive damages are unavailable and Plaintiff may seek only compensatory damages.  Defendants' Memorandum at 5-7.  Plaintiff has not responded to this argument.

It is settled that punitive damages may not be awarded against a municipality under § 1983.  *DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).  As such, should Chief Judge Arcara disagree with the primary recommendation to grant summary judgment in favor of Defendants based on Plaintiff's failure to establish the requisite causal connection between the alleged unfavorable employment references and Plaintiff's participation in activity protected under Title VII, then Plaintiff should be limited to

18

seeking only compensatory damages.

## **<u>CONCLUSION</u>**

Based on the foregoing, Defendants' motion for summary judgment (Doc. No.

13) should be GRANTED; the Clerk of the Court should be directed to close the case.

Alternatively, Plaintiff should be limited to seeking only compensatory damages.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March <u>7</u>, 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 7, 2007
            Buffalo, New York